```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2
    ---------------------------------------x
 3  DAIL MOSES-TAYLOR,

 4                          Plaintiff(s),

 5                                         21 CV 6756 (NSR)
        -vs-
 6                                         STATUS CONFERENCE

 7  GREYSTON FOUNDATION, INC.,

 8                          Defendant(s).
    ---------------------------------------x
 9
                                 United States Courthouse
10                               White Plains, New York

11                               Wednesday, April 5, 2023
                                 12:00 p.m.
12

13  Before:   THE HONORABLE NELSON S. ROMÁN,
                                 District Judge
14

15  A P P E A R A N C E S:

16
    OUTTEN & GOLDEN, LLP
17       Attorneys for Plaintiff
    BY:  SHIRA Z. GELFAND
18       TAMMY T. MARZIGLIANO

19
    GORDON REES SCULLY MANSUKHANI, LLP
20       Attorneys for Defendant
    BY:  JEREMI L. CHYLINSKI
21

22

23

24

25
```

1                THE DEPUTY CLERK:  Docket no. 21 cv 6756, Moses-Taylor
2    v. Greyston Foundation, Inc.
3                Will counsel please state their appearance for the
4    record, beginning with the Plaintiff.
5                MS. GELFAND:  Sure.  Shira Gelfand on behalf of the
6    Plaintiff, Dail Moses-Taylor.
7                MS. MARZIGLIANO:  Tammy Marzigliano for the Plaintiff.
8                MR. CHYLINSKI:  And Jeremy Chylinski, Gordon Rees, on
9    behalf of Greyston Foundation.
10               THE COURT:  All right, good afternoon, everyone.  This
11   is Judge Román.  This is a conference in the matter of
12   Moses-Taylor v. Greyston Foundation, docket no. 21 cv 6756, and
13   let me just give a little bit of background.
14               Back in December -- actually November of 2022, I
15   received correspondence from the Magistrate Judge, Judge
16   McCarthy, that the parties had reached a settlement agreement or
17   that the matter had been settled in principle and that the
18   parties would be filing settlement documents from that some time
19   thereafter.  The Court issued a 45-day order, and thereafter, I
20   received further correspondence requesting an extension of time
21   for the parties to file settlement documents.
22               And most recently, I believe in March, early March,
23   the Court received correspondence that the parties had not
24   reached a settlement or that settlement documents had not been
25   executed and that therefore Plaintiff wanted to reopen the case,

1  so I'm going to ask some very simple questions and I'll first
2  start with Plaintiff's Counsel.
3             Was there at the very least a verbal agreement reached
4  with respect to settling this matter?
5             MS. GELFAND:  Yes, your Honor, there was.  In early or
6  mid to late November, we had discussed with Defendant's Counsel
7  that we had reached an agreement.  I believe this was verbally
8  over the phone with another attorney in my firm, Allison Van
9  Kampen, and Mr. Chylinski, but we had confirmed via e-mail that
10 we had reached agreement on the economics, we even discussed a
11 proposed payment plan for, you know, for instance, to honor the
12 settlement, and then the parties filed a joint letter advising
13 the Court that we had reached this agreement, so --
14            THE COURT:  Mr. --
15            MS. GELFAND:  Go ahead.
16            THE COURT:  No, that's all I need to know.
17            Mr. Chylinski, was there a settlement agreement
18 reached at least in principle, meaning verbally, and the parties
19 were waiting for written documentation to basically confirm that
20 agreement?
21            MR. CHYLINSKI:  That's, that's correct, your Honor.
22 We had agreed on an amount and then it was -- subject to a
23 settlement agreement, and I think it was at that point, and I
24 don't want to belabor this, it's been in several letters to the
25 Court, I got really sick and it delayed the process, and I

1  believe we put in a few extensions based on that, so --
2             THE COURT:  So there was an agreement -- I, I don't
3  really need to know the whole...
4             MR. CHYLINSKI:  Okay.
5             THE COURT:  History...
6             MR. CHYLINSKI:  Understood.
7             THE COURT:  All right, so basically I'm going to ask
8  the most basic of questions that a judge would ask under these
9  circumstances.  Why haven't the documents for the settlement
10 been submitted to the Court?  Is there a reason for that?
11            MR. CHYLINSKI:  That, that --
12            THE COURT:  First, Plaintiff's Counsel, if you can
13 address that...
14            MS. GELFAND:  Yes --
15            THE COURT:  Did you prepare settlement documents.
16            MS. GELFAND:  Yeah, so, your Honor, we had discussed
17 with Defendant's Counsel that he would be providing an agreement
18 to us.  After numerous attempts to reach him, we did not hear
19 back, so we sent a basic settlement agreement to him with very
20 standard terms, we never heard back as to whether those terms
21 were acceptable or whether Defendant's Counsel had edits to the
22 agreement, but we -- yes, we had sent an agreement to
23 Defendant's Counsel.
24            THE COURT:  All right, so I'll ask --
25            MS. GELFAND:  So --

```
 1              THE COURT:  Hold on, hold on.  I'll ask Defense
 2   Counsel, did you receive those settlement documents?
 3              MR. CHYLINSKI:  We did, your Honor.
 4              THE COURT:  All right.  Have you had an opportunity to
 5   review the settlement documents?
 6              MR. CHYLINSKI:  I reviewed the documents and sent them
 7   to the client with my proposed revisions, and that's where --
 8   yes, I did review them.
 9              THE COURT:  Okay.  Have they been executed?
10              MR. CHYLINSKI:  No.
11              THE COURT:  Why not?
12              MR. CHYLINSKI:  Well, the -- that's what I was going
13   to get to.
14              I don't know whether it was I was sick and lost
15   control, but I had -- everyone was in order, it seemed, on our
16   side and then a new person came into the picture, a new HR or
17   director of HR, the old one left, and getting significant
18   resistance, you know, how can we do this and so on.  And I've
19   explained we agreed to this, your business agreed to this, I've
20   given you what I think we should do with the agreement, let's
21   get it done, let's move on.
22              And I've actually spoken with opposing counsel about
23   it, that I've gotten the insurer involved.  There is a mechanism
24   whereby they can force them, to force their client, to settle
25   based on the contract between them for that insurance, and I --
```

1            THE COURT:  So what are -- what's the status of the
2   settlement as you understand it as far as your client is
3   concerned?
4            MR. CHYLINSKI:  It's the one outlier person that
5   wasn't here before that's been the real...a difficulty, but my
6   thought is that we can basically put that person to the side and
7   get it done, get it through.
8            Just it's...it's just been -- I understand it's
9   obviously vexing for the Plaintiff, but it's vexing for me as
10  well, because we said, yeah, we have a settlement for your
11  Honor, subject to the settlement agreement, and we get to the
12  settlement agreement, and I think it's just because I was absent
13  for about a month, but, you know, then I came back and it was
14  certain things that changed with this new person, this new HR
15  person, who's been a real...bugaboo is the best word.  I don't
16  want to say anything else about this person.
17           THE COURT:  Okay.  So is your client prepared to
18  execute the settlement documents, that's the question that I
19  need to know at this time, and if not --
20           MR. CHYLINSKI:  What --
21           THE COURT:  And if not, I need to know.
22           MR. CHYLINSKI:  I, I believe they are because they're
23  going to be -- I don't want to say forced, but there's a
24  contractual mechanism that they would -- will have to.
25           THE COURT:  Okay.

```
 1              MR. CHYLINSKI:  If that makes sense.
 2              THE COURT:  All right.  So, then, what is Plaintiff's
 3   Counsel proposing at this time?  Because you haven't -- it's
 4   obvious that you haven't -- that the settlement documents
 5   haven't been signed or exchanged...
 6              MS. GELFAND:  Yeah.
 7              THE COURT:  So that the case is currently open, so...
 8              MS. GELFAND:  Yeah, so --
 9              THE COURT:  What is it that you're seeking to do?
10              MS. GELFAND:  So, your Honor, we had this conversation
11   last with Defendant's Counsel in, I believe it was the end of
12   February, so if there is this mechanism and, you know, we, we're
13   on the same page about enforcing this agreement, that would be
14   our, you know, our preferred course of action, but given that we
15   hadn't heard back from Defendant's Counsel in, you know, over a
16   month and a half, advising us just on the basic -- you know, the
17   status of this, you know, we need to make sure that this will be
18   moved along, because otherwise, like you had said, our recourse
19   would be open -- you know, reopening the case and proceeding
20   with discovery, which obviously, you know, I don't -- I think
21   all of us want to settle the matter, so that would be our --
22              THE COURT:  Well, you can -- okay, I'm going to
23   interrupt you for a quick second.
24              Your options are to file a motion seeking to enforce
25   the settlement, that's number one, and the alternative is, if
```

1  there's not a basis for enforcing the settlement, then reopening
2  the case, so in the event I do reopen --
3           MS. GELFAND:  Yeah, we --
4           THE COURT:  -- the case -- I just have a couple
5  questions -- is discovery complete in this matter?  Because
6  that's the -- I would have to possibly refer this back to Judge
7  McCarthy, so is discovery complete or is there still matters
8  that need to be addressed?
9           MS. GELFAND:  Well, firstly, you know, our preferred
10 course of action is filing a motion seeking to enforce the
11 settlement, but in terms of your question about discovery, the
12 answer is we're really -- we were at the beginning of discovery.
13          Even though substantial time had passed, you know,
14 Plaintiff's Counsel spent substantial time just seeking a
15 response from Defendant, so we were, we were certainly at the
16 beginning, so we had not taken any depositions, we had only
17 exchanged discovery, written discovery, I believe, and we've
18 received one -- or Defendant's first production before we
19 settled, so we would -- you know, we'd be at the beginning of
20 discovery if we were to reopen the case.  Well, not the very
21 beginning, but...
22          THE COURT:  Okay.  So I'm going to ask Defense
23 Counsel, what is the realistic possibility that we can, that we
24 can settle this case, and by that, I mean have actual documents
25 executed such that this issue is closed and resolved -- this

1  case is closed and resolved.
2              MR. CHYLINSKI:  Well -- thank you, your Honor.  If I
3  may, if I can propose -- whichever way that opposing counsel
4  wants to go, whether it's reopening or set a date for motions,
5  because either one of those I can use as a sword, if you will,
6  is -- because there's obviously the sword of the agreement
7  between Defendant and the insurer as a, you know, second sort of
8  weapon, if you will, is, you know, we're going to reopen this
9  and you guys are going to go the distance and they're never
10 going to settle with you, and by the time we get to the end, you
11 know...you understand where I'm going with this.
12             It's a good threat -- and maybe that's not the right
13 word, but it's a good chip to say either one of those, like, oh,
14 they're going to file in three weeks so, come on, guys, let's
15 get this done, or --
16             THE COURT:  Because the other way for me to do this is
17 I can have a hearing and force you to bring your clients in.
18             MR. CHYLINSKI:  Right, that was -- well...my proposal
19 would be set some sort of date and either this is when the
20 motion is due or this is when the...excuse me, when discovery
21 would reopen.
22             THE COURT:  So what I'm going to propose, I'm going to
23 ask Gina to see what date's available and I'm going to direct
24 the Plaintiff's Counsel to appear -- I'm sorry, that Defense
25 Counsel's...Defendant's clients appear, along with its insured.

1            MR. CHYLINSKI:  Mm-hmm.
2            THE COURT:  And quite possibly I may have a hearing on
3    the matter or I may -- what I'm -- you know what, I'm going to
4    ask the Plaintiffs to file the motion, and on the date that the
5    motion is to be filed, I'll have everybody come in to court.
6    Because this is -- there's no reason for me to be going back and
7    forth with this type of correspondence, there's no reason for
8    the Court to have to have another conference with respect to
9    this matter if it was settled.  You know, we have a bunch of
10   other cases that we need to tend to, and if there was a
11   settlement that was reached in principle and it was just a
12   question of having doc -- you know, executing the documents and
13   there's no real issue here, this should not be happening.
14           So how much time does Plaintiff's Counsel need to file
15   the motion?
16           MS. GELFAND:  I, I would say -- you know, I'll let
17   Tammy weigh in here if she feels differently, but I think in the
18   next two weeks would be fine.
19           THE COURT:  So 15 days, 21 days, you tell me.
20           MS. GELFAND:  I think 15 days is fine.
21           THE COURT:  Okay.  Let's see...how much time does
22   Defense Counsel need to oppose?
23           MR. CHYLINSKI:  A week if it's 15 -- yeah, a week is
24   fine.
25           THE COURT:  So I'll give you 15 days.

1                MR. CHYLINSKI:  Okay.
2                THE COURT:  Gina, if you can keep track of this, and
3    then seven days for reply, and then -- so, Gina -- I think
4    you're telling me whether or not we can set this matter down for
5    a conference so that -- soon after the reply date, and in which
6    case, I would direct Defense Counsel to appear with his client,
7    along with the insured.
8                THE DEPUTY CLERK:  Yes, your Honor.  I'm working on
9    that right now.
10               THE COURT:  Thank you.
11               (Brief pause)
12               THE DEPUTY CLERK:  Okay, Counselors, the briefing
13   schedule for Plaintiff's motion to reinforce the settlement
14   agreement, the schedule is as follows.  Moving papers will be
15   filed on April 20, 2023; opposition papers will be filed on May
16   5, 2023; and reply papers will be filed on May 12th, 2023.
17               As the papers are filed, the respective party should
18   mail two hard courtesy copies to chambers as well as e-mail one
19   set of papers to chambers's e-mail.  The evidentiary hearing
20   will be held on May 19th, 2023, at ten a.m.
21               Do those dates work for counsel?  Ms. Gelfand --
22               THE COURT:  So, Gina, it would be a conference, slash,
23   potential hearing for, for --
24               THE DEPUTY CLERK:  Okay, your Honor.  Well, I'd have
25   to block the day...

1               THE COURT:  Yes, yes, I understand.
2               THE DEPUTY CLERK:  For the hearing.
3               THE COURT:  I understand.
4               THE DEPUTY CLERK:  I can't just put it in as a
5    conference or else I would schedule something else and I don't
6    want to do that, but I'll make that notation.
7               So does that schedule work for Plaintiff's Counsel?
8               MS. GELFAND:  Yes, that works for us.
9               THE DEPUTY CLERK:  Okay.  And does that work for
10   Defense Counsel?
11              MR. CHYLINSKI:  Yes, thank you.
12              THE DEPUTY CLERK:  Okay, your Honor.
13              THE COURT:  All right, so the parties have the
14   briefing schedule and we'll put it down for a conference, slash,
15   hearing.  I'm directing that Defense Counsel have his client
16   present, along with the insured, a representative from the
17   insured.
18              Obviously, if the parties are able to work out their
19   differences before May 19th and file the appropriate documents,
20   all right, there would be no need for cont -- any further motion
21   practice in this matter and there would be no basis for me to
22   hold a hearing.  I would ask that the parties nonetheless
23   communicate with the Court in the event that happens.  They
24   should communicate with the Court in advance of the next
25   conference date, slash, hearing date, which is May 19th, 2023.

1              Is there anything else that the parties want to either
2  discuss or place on the record?
3              MS. GELFAND:  Your Honor, I just have one question.
4              I understand that Defendant and the insured will
5  appear.  Does the Court wish to have Plaintiff appear at this
6  conference?  Because I will just need to --
7              THE COURT:  Well, from what I understand, you guys had
8  a settlement, right?  So it's a question --
9              MS. GELFAND:  Right.
10             THE COURT:  -- of, you know, you just need someone to
11 discuss or be able to articulate that -- you know, under what
12 circumstances a settlement was reached and what was, what was
13 the actual settlement.
14             MS. GELFAND:  Mm-hmm.  Okay, thank you.
15             THE COURT:  You can, you can have your client present
16 if you'd like, it'll be up to you, but as long as you have
17 someone that can indicate, you know, to whom this settlement was
18 conveyed to and what the settlement was and, you know, what type
19 of response you received...I mean, it's obvious from the
20 correspondence that I'm receiving that Plaintiff understood that
21 there was a settlement and --
22             MS. GELFAND:  Mm-hmm.
23             THE COURT:  -- Defendants failed to execute the
24 documents.  The question is was there a settlement, and if there
25 was an understanding reached by the parties, what's the basis

1  for not signing the -- for not executing the documents.  But all
2  this can be --
3          MS. GELFAND:  Understood.
4          THE COURT:  -- dispensed with provided that it's done
5  before either the motions are filed or before May 19th.
6          MS. GELFAND:  Understood.  Thank you.
7          THE COURT:  All right, thank you.
8          Anything else?  All right, I'll take the silence to
9  mean that there's nothing further that they want to discuss with
10 the Court, all right, so, Gina, with that in mind, we can
11 recess.
12         THE DEPUTY CLERK:  Yes, your Honor.  Court in recess.
13 Thank you, everyone.  Have a good day.
14         MR. CHYLINSKI:  Thank you.
15         MS. GELFAND:  Thank you, your Honor.
16         THE DEPUTY CLERK:  Bye-bye.
17         Certified to be a true and accurate transcript.
18                    *Tabitha Dente*
19         _____
20         TABITHA DENTE, RPR, RMR, CRR
21         OFFICIAL COURT REPORTER
22
23
24
25