**CONSULT WITH AN ATTORNEY PRIOR TO SIGNING THIS AGREEMENT AND GENERAL RELEASE. BY SIGNING THIS AGREEMENT AND GENERAL RELEASE, YOU WAIVE IMPORTANT LEGAL RIGHTS.**

### CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE

This SETTLEMENT AGREEMENT AND GENERAL RELEASE ("Agreement") is made and entered into by Dail Moses-Taylor, on behalf of herself, her heirs, executors, administrators, trustees, and assigns (the "Releasor"), and Greyston Foundation, Inc. together with (a) each of its present, past owners, affiliates, related business entities, parent companies, subsidiaries, affiliates, predecessors, successors, assigns, divisions, directors, officers, board members, partners, associates, trustees, administrators, managers, member-managers, members, employees, stockholders, representatives, agents, heirs, assigns, insurers, and attorneys, in their representative capacities, and all persons acting by, through, under, or in concert with any of these entities, and (b) the heirs, executors, administrators, estates, assignees, and insurers, including insurers' current and former agents of each of the foregoing persons and entities (these persons and entities being collectively referred to as the "Released Parties" or "Respondents") (the "Releasor" and the "Released Parties" are collectively referred to as the "Parties").

**WHEREAS**, the Releasor filed a Complaint with the District Court for the Southern District of New York on or about July 30, 2021 alleging the following claims: (1) retaliation in violation of New York's Not-For-Profit Corporation Law, § 715-b ("NFPCL"); (2) retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); and (3) retaliation in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296, *et seq.* ("NYSHRL") captioned as <u>Dail Moses-Taylor v. Greyston Foundation, Inc.</u>, No.: 7:21-CV-6756 (the "Complaint");

The signed document can be validated at https://app.vinesign.com/Verify

**WHEREAS**, the Released Parties have denied and continue to deny the allegations contained in the Complaint, and have denied and continue to deny that they have violated any law, rule, statute or regulation, or committed any wrong whatsoever;

**WHEREAS**, the Releasor has agreed to dismiss and not pursue any and all claims that were asserted or could have been asserted in the Complaint against the Released Parties, including any claims related to or arising out of Releasor's employment or relationship with Greyston Foundation, Inc. with prejudice, without costs, without contribution, and without any admission of liability; and

**WHEREAS**, the Parties desire to settle fully and finally all differences with each other in accordance with the terms and conditions set forth herein including, without limitation, any claims related to or arising out of Releasor's employment or relationship with Greyston Foundation, Inc. and any claims raised or which could have been raised in the Complaint or which relate to the Complaint.

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth herein, and other good and valuable consideration, and to avoid the inconvenience and expense of litigation, and without any admission of fault or liability on the part of the Parties;

**IT IS HEREBY AGREED** by and between the Parties as follows:

1. Consideration.

    (a) Settlement Payment. In consideration for the Releasor's execution of and compliance with the terms of this Confidential Settlement Agreement and General Release, including, but not limited to, the release and waiver of all claims against the Released Parties related to or arising out of Releasor's employment or relationship with Greyston Foundation, Inc., including any claims that were raised or could have been raised in the Complaint and the settlement

and dismissal with prejudice of the Complaint (including any claims that were or could have been asserted in the Complaint) as set forth more fully below, the Released Parties shall deliver a Settlement Payment totaling [Redacted] [Redacted] inclusive of attorneys' fees, within thirty (30) days after this Agreement is fully executed, Releasor tenders all necessary settlement documentation, including an IRS Form W9 and W4 from Releasor and an IRS Form W9 from her counsel, Outten & Golden, LLP, and the revocation period, as defined in Paragraph 17 below, expires.

(i) a check in the gross amount of [Redacted] [Redacted] and made payable to Dail Moses-Taylor, less all normal withholding and any other deductions required by law, and for which an IRS Form W2 shall be issued at the appropriate time;

(ii) a check made payable to Dail Moses-Taylor in the amount of [Redacted] which shall represent alleged emotional distress damages, and for which an IRS Form 1099 shall be issued;

(iii) a check made payable to Outten & Golden, LLP, in the amount of [Redacted] for attorneys' fees and costs, for which IRS From 1099s shall be issued to Outten & Golden, LLP and Dail Moses-Taylor.

(b) The payments discussed in paragraphs (1)(a)(i), (1)(a)(ii), and (1)(a)(iii) above constitute the "Settlement Payment" for all of the Releasor's claims or potential claims against the Released Parties related to or arising out of Releasor's employment or relationship with Greyston Foundation, Inc. including, but not limited to, those claims concerning or relating in any way to the allegations raised in the Complaint and/or which could have been raised in the Complaint.

(e) <u>Indemnification</u>. This settlement is based upon a good faith determination of the Parties to resolve a disputed claim. The Parties have attempted to resolve this matter in compliance with both state and federal law, and it is believed that the settlement terms adequately consider and protect Medicare's interest and do not reflect any attempt to shift responsibility of past or future medical treatment to Medicare in contravention of 42 U.S.C. § 1395(b). The Parties acknowledge and understand that any present or future action or decision by the Centers for Medicare & Medicaid Services ("CMS") on this settlement, or Releasor's eligibility or entitlement to Medicare or Medicare benefits, will not render this release void or ineffective, or in any way affect the finality of this liability settlement. The Releasor represents and warrants that Releasor is not currently a Medicare beneficiary nor within thirty (30) months of becoming a Medicare beneficiary; is not 65 years of age or older; is not suffering from end stage renal failure or amyotrophic lateral sclerosis; has not received Social Security benefits for 24 months or longer; and has applied, but has not been approved, for Social Security disability benefits and is not appealing the denial. She has not applied for general Social Security benefits. No Social Security disability benefits or any other Social Security benefit payments have been made as of the date of this Agreement. Because the Releasor is not a Medicare beneficiary as of the date of this Agreement, no conditional payments have been made by Medicare. Further, because the Releasor is not expected to become a Medicare beneficiary within thirty (30) months from the date of this release, no funds have been allocated for future incident-related medical treatments.

(i) In the event that any of the above information provided by Releasor is false or in any way incorrect, the Releasor shall be liable for any and all actions, causes of actions, penalties, claims, costs, services, compensation, or the like resulting from these inaccuracies. The Releasor acknowledges that Medicare may require the Releasor to exhaust the

entire settlement proceeds on future Medicare-covered incident-related medical expenses should she become a Medicare beneficiary within thirty (30) months from the date of this release.

(ii) The Releasor will indemnify, defend and hold the Released Parties and their insurer(s) harmless from any and all claims, liens, Medicare conditional payments and rights to payment, known or unknown related to Medicare coverage. If any governmental entity, or anyone acting on behalf of any governmental entity, seeks damages including multiple damages from the Released Parties and/or their insurer(s) relating to payment by such governmental entity, or anyone acting on behalf of such entity, relating to Releasor's alleged injuries or the Complaint, Releasor will defend and indemnify the Released Parties and their insurer(s), and hold the Released Parties and their insurer(s) harmless from any and all such damages, claims, liens, penalties, Medicare conditional payments and rights to payment, including any reasonable attorneys' fees sought by such entities related to Medicare coverage. The Releasor further agrees to defend, indemnify, and hold harmless the Released Parties from any cause of action arising from any alleged loss of Medicare or Social Security benefits, including a recovery for past, present, and future liens, including attorneys' fees. The Releasor also agrees to waive her rights to bring any possible future actions against the Released Parties or their insurer(s) under the Medicare Secondary Payer Statute.

(iii) The Releasor acknowledges that any decision regarding entitlement to Social Security Disability Insurance, including the amount and duration of payments is exclusively within the jurisdiction of the Social Security Administration, the U.S. government, and the U.S. federal courts and is determined by federal law and regulations. As such, the U.S. government is not bound by any of the terms of this Agreement. The Releasor has been apprised of her right to seek assistance from legal counsel of her choosing or directly from the Social

Security Administration or other governmental agencies regarding the impact this Agreement may have on her current or future entitlement to Social Security Disability Insurance or other governmental benefits.

2. Acknowledgments and Full Discharge of Liabilities.

(a) The Releasor acknowledges and agrees that the Settlement Payment and other benefits provided pursuant to this Agreement: (i) are in full discharge of any and all liabilities and obligations of the Released Parties to the Releasor, monetarily or otherwise; and (ii) constitute full and final satisfaction and relief for any claim the Releasor has, had, or could have brought against the Released Parties in the Complaint and/or is part of the Full and General Release of Claims in Paragraph 4 below.

(b) The Releasor acknowledges and agrees that the Settlement Payment provided pursuant to this Agreement is subject to her executing this Agreement, and her compliance with her obligations hereunder;

(c) The Releasor represents that she has not filed any other complaints, claims, or actions against the Released Parties with any state, federal or local agency, or court and warrants that she will not do so at any time hereafter concerning the claims that were made or could have been made in the Complaint. The Releasor further agrees that if any agency or court assumes jurisdiction of any other complaint, claim, or action against the Released Parties on her behalf, she will direct that agency or court to withdraw from or dismiss with prejudice the matter as it relates to the Releasor;

(d) The Releasor understands and agrees that the Released Parties are not obligated to the Releasor or her counsel for attorneys' fees, costs, interest, or the like in connection with the Complaint, except as stated in this Agreement. The Releasor further understands and

6

agrees that the Settlement Payment reflects payment to the Releasor and her counsel for attorneys' fees and costs as well as compensation for any other damages relating to the claims made in Complaint. The Releasor agrees that she is solely responsible for the payment and reporting of any federal, state, and/or local taxes on the settlement amount and agrees to waive any such claims against the Released Parties for any liability for the reporting or payment of applicable taxes other than the employer portion due pursuant to 1(b)(i). The Released Parties have not made, and do not make, any representations as to the tax consequences of any payment hereunder. The taxability of the settlement monies shall not affect the validity of this Agreement.

3.  Non-Admission. This Agreement is not intended, and shall not be construed, as an admission of a violation of any federal, state or local law, ordinance, or regulation. This Agreement is not intended, and shall not be construed, as an admission that the Released Parties committed any wrong whatsoever -- and the Released Parties expressly deny any wrongdoing. The Releasor does not purport and will not claim to be a prevailing party to any degree or extent in a subsequent proceeding related to the Complaint, nor will this Agreement or its terms be admissible in any proceeding in a court of competent jurisdiction other than in a proceeding for breach of the terms contained herein.

4.  Full and General Release of Claims.

    (a) In General. In exchange for the Released Parties' promises contained in this Agreement, including the payments and benefits provided to the Releasor in Paragraph 1 above, the Releasor agrees, irrevocably and unconditionally, to release, forever discharge, and acquit the Released Parties individually or jointly, and severally, from any and all actions, causes of action, suits, claims, complaints, demands, appeals, charges, debts, injuries of any kind, claims for sums of money, controversies, agreements, damages, judgments and/or executions of any kind

whatsoever which existed at any time prior to the execution of the Agreement related to or arising out of Releasor's employment or relationship with Greyston Foundation, Inc. These General Releases include, but are not limited to, any and all claims relating to Releasor's employment with the Released Parties, and/or the cessation of such employment, and/or any alleged mistreatment of Releasor of any kind and/or relating to any aspect of any relationship or dealing or interaction or communication of any kind involving Releasor or any of the Released Parties. The scope of what Releasor releases in this Agreement includes, but is not limited to, a full general release by Releasor of any and all claims or potential claims that Releasor may have against the Released Parties from the beginning of time up until the effective date of this agreement, for any and all injunctive relief, declaratory relief, physical injury, personal injury, and injury of any and all other kinds, and/or any and all other kinds of alleged damages, or other monetary obligation, or obligation of any other sort, including but not limited to, any and all compensatory damages, emotional distress damages, punitive damages, costs, attorneys' fees, and any and all other kinds of damages that are based in whole or in part on any act or omission occurring before this Agreement becomes effective related to or arising out of Releasor's employment or relationship with Greyston Foundation, Inc. Nothing in this agreement shall be intereopreted to impede either Party from seeking enforcement of the terms and conditions contained herein.

    (h)    <u>Specific Release</u>. Without limiting the foregoing General Release, Releasor releases Released Parties from all rights and claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section §1981, the Age Discrimination in Employment Act of 1967, the Rehabilitation Act of 1973, the Civil Rights Acts of 1866 and 1991, the Americans with Disabilities Act of 1990, the Employee Retirement Income Security Act of 1974, the Equal Pay Act of 1963, the Fair Labor Standards Act, the Family and Medical Leave Act of 1993, the Older

Workers Benefit Protection Act of 1990, the Occupational Safety and Health Act of 1970, the Worker Adjustment and Retraining Notification Act of 1989, the National Labor Relations Act of 1935, the Sarbanes Oxley Act of 2002, the New York State Human Rights Law, N.Y. Exec. Law § 296, the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107, the New York Labor Law, as well as any other federal, state, or local statute, regulation, or common law regarding employment, employment discrimination, retaliation, equal opportunity, or wage and hour. Releasor specifically understands that she is releasing claims based on age, race, color, sex, sexual orientation, marital status, religion, national origin, citizenship, veteran status, disability, and other legally protected categories, as well as any compensation-related claims, including any and all claims arising under any federal, state, or local law, claims for breach of contract, any tortious act or other civil wrong, attorneys' fees, and all compensation and benefit claims.

Releasor represents that she has been paid all wages and other compensation due to her as a result of services performed and/or as an employee of the Released Parties.

(c) <u>Claims Released</u>. The Releasor understands and agrees that, with the exception of her worker's compensation claims, her right to enforce this agreement, and any other claims that cannot be waived as a matter of law, she is releasing all known and unknown claims, promises, causes of action, or similar rights of any type that she and her heirs, executors, administrators, trustees, and assigns may have against the Released Parties, through the date she executes this Agreement related to or arising out of Releasor's employment or relationship with Greyston Foundation, Inc.

(d) <u>Waiver</u>. By virtue of the foregoing, the Releasor hereby acknowledges that she cannot benefit monetarily from any claims otherwise released by this Agreement and further

agrees that she has waived any right to equitable relief that may have been available to her with respect to any claim or cause of action released herein. Therefore, the Releasor agrees that she will not accept any award or settlement from any source or proceeding (including, but not limited to, any proceeding brought by any other person, entity, or governmental agency) with respect to any claim or right waived or released in this Agreement unless otherwise prohibited by law.

5. Confidentiality and Non-Disclosure of the Agreement.

(a) The Parties shall mutually maintain the confidentiality of this Confidential Settlement Agreement and General Release. This Confidential Settlement Agreement and General Release shall not be introduced by the Parties in any proceeding except to enforce this Confidential Settlement Agreement and General Release or except by lawful process or order of a court of competent jurisdiction.

(b) The Releasor agrees that neither she nor any person acting by, through, under, or in concert with her will at any time disclose (by any method including, but not limited to, verbal, written, or electronic) the terms or existence of this Confidential Settlement Agreement and General Release or any fact concerning its negotiation, execution, or implementation, except for disclosures: (i) to an attorney of her choice who may be advising her in connection with this Agreement; (ii) to her accountant or tax preparer; (iii) to her immediate family; (iv) to any health care provider or religious advisor who may be treating/advising her in the course of that treatment/counseling; or (v) as otherwise required by law (including valid subpoena). The Releasor further agrees that disclosure in this Paragraph includes, but is not limited to, any postings, comments, pictures, texts, or notices through any smartphone, internet, social media, or related technology such as chat rooms, web pages, Facebook, Twitter, Instagram, Pinterest, Snapchat, Four Square, Bebo, LinkedIn, Google Plus, Xanga, Yelp, and any and all similar such sites or

technology, regardless of whether she participates anonymously or under a pseudonym. It is expressly understood and agreed by the Releasor that she will notify the third parties to whom she may make disclosures that they are required to maintain the confidentiality and non-disclosure provisions of this Confidential Settlement Agreement and General Release. Further, Releasor expressly understands and agrees that, if any individual to whom she discloses or with whoms she discusses any of the above information makes unauthorized disclosures, the Releasor, as the disclosing Party, may be held liable under this Paragraph for those disclosures as if she engaged in them personally.

Released Party shall not publicly disclose the existence and contents of this Agreement, other than (i) to the Released Parties' tax or legal advisors, Human Resources department, or employees in order to enforce or comply with the Agreement; (ii) pursuant to the order of a court or as required or requested by any regulatory or self-regulatory agency; and/or (iii) only the terms, contents or execution of this Agreement for purposes of securing enforcement of the terms and conditions of this Agreement, should that ever be necessary.

(o) In the event the Parties are asked about the matter that led to this Confidential Settlement Agreement and General Release, including anyone who already knows of the existence of the Complaint, the Parties shall respond only that the matter has been resolved to the mutual satisfaction of the Parties.

6. No Negative Statements. The Releasor agrees that she will not make or cause to be made any statements (oral or written) that disparage the reputation or business of Greyston Foundation, Inc., including but not limited to, publishing or causing to be published information or opinions regarding Greyston Foundation, Inc., experiences the Releasor alleges or claims to have had while an employee of Greyston Foundation, Inc., on any internet website, social

media website, in a print publication, or orally. Further, the Releasor shall not make or cause to be made any statements (oral or written) that disparage the reputation or business of Greyston Foundation, Inc. to clients or potential clients of the Released Parties. The Releasor further agrees that she will not jointly or individually make any disparaging statements about, or do anything that damages Greyston Foundation, Inc., their services, reputation, officers, employees or financial status in any of their business relationships. Similarly, management-level employees of Greyston Foundation, Inc. agree that they will not make or cause to be made any statements (oral or written) that disparage the reputation of Releasor, including but not limited to, publishing or causing to be published information or opinions regarding Releasor, experiences they allege or claims to have had while Releasor was an employee of Greyston Foundation, Inc., on any internet website, social media website, in a print publication, or orally. Further, the management-level employees shall not make or cause to be made any statements (oral or written) that disparage the reputation of Releasor. In the event any third party contacts Greyston Foundation, Inc. regarding Releasor's employment, Greyston Foundation, Inc. shall respond only with a neutral reference consisting of dates of employment and positions held. These provisions are material parts of this Agreement, and if any party breaches these provisions, an aggrieved party may seek all remedies available at law and/or equity, including, without limitation, injunctive relief and/or monetary damages, and reasonable attorneys' fees and costs of suit for enforcing this provision.

7. <u>No Re-Employment</u>. Releasor agrees and understands that she will not knowingly seek employment or re-employment with Greyston Foundation, Inc. or any related/affiliated entities at any time now or in the future. In the event Releasor seeks re-employment with Greyston Foundation, Inc. and/or any of its related/affiliated entities, this provision shall be deemed to be a

complete basis for refusing to hire or employ Releasor without liability. To the extent that Releasor is in the future employed by any entity which merges with or is acquired by Greyston Foundation, Inc., this provision shall not require Releasor to resign from such employment.

8. Severability. If at any time, after the date of the execution of this Agreement, any court, agency, or other tribunal finds that any provision of this Agreement is illegal, void, or unenforceable, that provision will no longer have any force or effect. However, illegality or unenforceability of such provision shall have no effect upon, and shall not impair, the enforceability of any other provision of this Agreement. If a court should determine that any portion of this Agreement is overbroad or unreasonable, the Parties agree that such provision shall be given effect to the maximum extent possible by narrowing or enforcing in part that aspect of the provision found overbroad or unreasonable. If any provision of this Agreement is declared illegal or unenforceable by any court of competent jurisdiction, the Releasor agrees that she cannot obtain a personal recovery against the Released Parties, that she will accept any modifications to the language of the Agreement as proposed by Released Parties to ensure the enforceability of a revised Agreement provision, and that she will not be entitled to any payments or benefits other than the payment and benefits contained in this Agreement.

9. Interpretation. Should any provision of this Agreement require interpretation or construction, it is agreed by the Parties that the entity interpreting or construing this Agreement shall not apply a presumption against one Party by reason of the rule of construction that a document is to be construed more strictly against the Party who prepared the document.

10. Entire Agreement. This Agreement constitutes the entire and complete understanding and agreement between the Parties concerning the matters set forth herein, and there are no understandings or agreements, oral or otherwise, that are not reflected herein. This

Agreement may not be clarified, modified, changed or amended except in a writing signed by each of the Parties.

11.  Acceptance.  The Parties were represented by counsel and this Agreement was negotiated by counsel. The Parties and counsel for the Parties have reviewed this Agreement and have participated in its drafting and, accordingly, no party shall attempt to invoke the rule of construction to the effect that ambiguities, if any, are to be resolved against the drafting party.

12.  Waiver.  Waiver of any term or condition of this Agreement by any Party shall only be effective if in writing and shall not be construed as a waiver of any subsequent breach or failure of the same term or condition, or a waiver of any other term or condition of this Agreement.

13.  Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to the doctrine of conflicts of law.

14.  Headings.  The paragraph headings contained herein are for purposes of organization only and shall not constitute part of this Agreement.

15.  Execution in Counterpart.  This Agreement may be executed in counterparts, each of which shall be deemed an original and shall be deemed duly executed upon the signing of the counterparts by the Parties. The parties may execute this Agreement electronically and such electronic execution shall be deemed an original. Electronic delivery (.pdf) of this executed Agreement shall be deemed delivery of an original.

16.  Review by Counsel.  The Parties hereby specifically acknowledge that they have read and understand this Agreement; that it is meant as a settlement and release, releasing the Released Parties from any and all claims the Releasor has or may have against the Released Parties; that the Parties are represented by counsel; that the Parties have reviewed this Agreement with their respective attorneys, that the Parties voluntarily enter into this Agreement with full

knowledge of its terms and conditions and that such terms and conditions are binding upon the Parties; and that the terms and conditions of this Agreement were determined by negotiation.

17. <u>Review and Revocation Period</u>. Dail Moses-Taylor will have twenty-one (21) calendar days to consider this agreement, and seven (7) calendar days after delivering the fully executed original hereof to counsel for the Released Parties to rescind and revoke the settlement of his claims. Notice of revocation must be delivered to and received by counsel for Defendants at the following address: Jeremi L. Chylinski, Gordon & Rees LLP, 18 Columbia Turnpike, Suite 220, Florham Park, New Jersey 07932, no later than 11:59 p.m. on the seventh calendar day after delivery of the executed agreement. The settlement checks will be delivered to Dail Moses-Taylor's attorney no later than thirty (30) days after the revocation period has expired.

18. **DAIL MOSES-TAYLOR IS HEREBY ADVISED THAT SHE HAS A REASONABLE TIME TO REVIEW AND CONSIDER THIS AGREEMENT AND IS HEREBY ADVISED IN WRITING TO CONSULT WITH AN ATTORNEY PRIOR TO EXECUTION OF THIS AGREEMENT. HAVING ELECTED TO EXECUTE THIS AGREEMENT, TO FULFILL THE PROMISES, AND TO RECEIVE THE CONSIDERATION IN PARAGRAPH 1 ABOVE, DAIL MOSES-TAYLOR FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE, AND RELEASE ALL CLAIMS SHE HAS OR MIGHT HAVE AGAINST THE RELEASED PARTIES RELATING TO OR ARISING OUT OF RELEASOR'S EMPLOYMENT OR RELATIONSHIP WITH GREYSTON FOUNDATION, INC.**

IN WITNESS WHEREOF, Dail Moses-Taylor and Greyston Foundation, Inc. have duly executed this Agreement and General Release as follows:

*[Signature]*                                                              Dated: 05/19/2023
**DAIL MOSES-TAYLOR**

*[Signature]*                                                              Dated: 5/19/23
**GREYSTON FOUNDATION, INC.**

By:
Title: